UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| **v.** : | No. 21-cr-369-1 (RBW) |
| : | |
| **LINA CEBALLES PERDOMO,** : | |
| **Defendant.** : | |

## STATEMENT OF OFFENSE IN SUPPORT OF GUILTY PLEA

### I.   Summary of the Plea Agreement

Defendant Lina Ceballes Perdomo agrees to admit guilt and enter a plea of guilty to a superseding Information charging her with Conspiracy to Distribute 500g or More of a Mixture or Substance Containing a Detectable Amount of Cocaine for Purpose of Unlawful Importation, in violation of 21 U.S.C. §§ 959(a), 960 (b)(2)(B)(ii), and 963. In this case, the penalty for Count One is:

(1)   A term of imprisonment of not less than 5 years and not more than 40 years;

(2)   a fine not to exceed $5,000,000;

(3)   a term of supervised release of at least 4 years, after any period of incarceration; and

(4)   a special assessment of $100.

The United States Sentencing Guideline § 5E1.2 permits the Court to impose an additional fine to pay the costs of imprisonment and any term of supervised release and/or probation.

1

## II. Elements of the Offenses

The essential elements of the offense of Conspiracy to Distribute 500g or More of a Mixture or Substance Containing a Detectable Amount of Cocaine for Purpose of Unlawful Importation, in violation of 21 U.S.C. §§ 959(a), 960 (b)(2)(B)(ii), and 963, each of which the government must prove beyond a reasonable doubt to sustain a conviction, are:

(1)     That an agreement existed between two or more persons to commit the crime of distribution of a controlled substance intending, knowing, or having reasonable cause to believe that such substance will unlawfully enter the United States; and

(2)     That the defendant intentionally joined in that illegal agreement.

The offense of violating 21 U.S.C. § 963, by conspiring to violate federal narcotics laws, does not include as an element, the commission of an overt act in furtherance of the conspiracy. *United States v. Mejia*, 448 F.3d 436, 445 (D.C. Cir. 1987).

The essential elements of the offense of Distribution 500g or More of a Mixture or Substance Containing a Detectable Amount of Cocaine for Purpose of Unlawful Importation are:

(1)     That the defendant distributed a controlled substance. Distribute means to transfer or attempt to transfer to another person. The government need not prove that the defendant received or expected to receive anything of value in return;

(2)     That the defendant distributed the controlled substance knowingly and intentionally. This means consciously, voluntarily and on purpose, not mistakenly, accidentally or inadvertently.

(3)     That the controlled substance was 500 grams or more of a mixture or substance containing cocaine.

(4)     That the defendant intended, knew, or had reasonable cause to know that such substance or chemical will be unlawfully imported into the United States

2

III. **Brief Statement of the Facts**

The following statement of facts does not purport to include all of the defendant's illegal conduct or the conduct of his co-conspirators. It also does not purport to be an inclusive recitation of everything that the defendant heard, knew, or witnessed concerning the illegal activities of herself or others. It is intended to represent sufficient information for the Court to find a factual basis for accepting the defendant's guilty plea.

Had this case gone to trial, the government's evidence would have proved the following beyond a reasonable doubt:

1. Beginning in or around February 2019, Special Agents with the Federal Bureau of Investigation ("FBI") Washington Field Office and FBI LEGAT Bogota (FBI Bogota) initiated an investigation into the drug trafficking activities of the Defendant and Co-Conspirator 2, and their associates based in Colombia. During the course of the investigation, it was determined that the Defendant and Co-Conspirator 2 are sister and brother.

2. Over the course of several months, Special Agents with FBI Bogota worked with a Confidential Human Source ("CHS") and recorded several meetings with the Defendant, Co-Conspirator 2, and some of their associates. The majority of these meetings were criminal in nature and the Defendant and Co-Conspirator 2 detailed to the CHS that they would like the CHS's help in transporting 150 kilograms of cocaine out of Colombia to the United States.

3. In March 2019, the CHS and the Defendant discussed the purchase of 15 to 20 kilograms of cocaine for importation into the United States. On March 24, 2019, the CHS and an Undercover Law Enforcement Office ("UC") met with the Defendant, Co-Conspirator 2, and Co-Conspirator 3, to discuss the logistics of the deal. The Defendant, Co-Conspirator 2, and Co-Conspirator 3 advised that they required a $2,500 down payment for the deal. On March 27, 2019,

the FBI wired $2,500 to a Colombian bank account at the instruction of the associates. Ultimately, this transaction did not occur, despite the associates accepting the down payment, and the money was returned.

4. On August 14, 2019, the Defendant and Co-Conspirator 2 arranged another cocaine sale to the CHS. The agreed upon transaction was 12 kilograms of cocaine in exchange for approximately $20,000. On August 14, 2019, Co-Conspirator 2 met the CHS and UC at a shopping center in Bogota, Colombia; Co-Conspirator 2 brought 12 kilograms of cocaine with him in a backpack. The CHS and UC gave Co-Conspirator 2 another bag containing currency in exchange for the cocaine. The substances in the backpack were analyzed and all tested positive for cocaine.

5. In October 2020, another cocaine purchase was arranged between the Defendant, Co-Conspirator 2, and the CHS. The deal was for 5 kilograms of cocaine. On October 19, 2020, Co-Conspirator 4, Co-Conspirator 5, and Co-Conspirator 6 met with the CHS and two UCs where they discussed, among other things, price and the fact that the cocaine would be destined for the United States. Later, Co-Conspirator 5, Co-Conspirator 6, and Co-Conspirator 7 met with two UCs at a shopping center in Bogota, Colombia to complete the deal. During this meeting, a UC asked Co-Conspirator 7 if the price was the same, and Co-Conspirator 7 stated words to the effect of, yes, of course the price would be the same that was previously negotiated, in apparent reference to the meeting earlier that day. However, these co-conspirators only brought 2 kilograms with them, instead of the agreed upon five kilograms, claiming that they feared being robbed. During the course of this delivery, Co-Conspirator 7 asked how many more kilos the UCs needed and stated that he could provide the other three kilos, and they agreed to coordinate the subsequent 3 kilo delivery through Co-conspirators 4, 5, and 6.

6. The following day, October 20, 2020, Co-Conspirator 4, Co-Conspirator 5, Co-

Conspirator 6 provided the remaining three kilograms to the CHS and the UC. The substances in each package were analyzed and all tested positive for cocaine. In exchange, approximately $6,700 was paid to the members of the conspiracy.

7. The Defendant knowingly and intentionally agreed with the members of this conspiracy to participate in a conspiracy to distribute narcotics, knowing or have reasonable cause to believe that such narcotics would be unlawfully imported into the United States.

8. The Defendant's role in the conspiracy included the distribution of cocaine, and the defendant agrees that it was reasonably foreseeable to her that at least 15 kg but less than 50 kg of cocaine was being distributed by members of the conspiracy, which is attributable to ger as a member of the conspiracy.

9. The Defendant further agrees that she does not possess information to dispute or disprove the allegations against the co-defendants in Case No. 21-cr-369 (RBW).

                                      Respectfully Submitted

                                      EDWARD R. MARTIN, JR.
                                      United States Attorney

By:    */s/ Solomon S. Eppel*
          SOLOMON S. EPPEL
          Assistant United States Attorney

## DEFENDANT'S ACKNOWLEDGMENT

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I have read every word of this Statement of the Offense and reviewed it with my attorney. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of Offense fully. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crimes charged.

Further, I have discussed with my attorney Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. I knowingly and voluntarily waive the rights that arise under these rules in the event that I withdraw my guilty plea, withdraw from my Plea Agreement **after signing it**, or breach my Plea Agreement. I understand that, in such instances, the Government will be free to use against me, directly and indirectly, in any criminal or civil proceeding, any statements I have provided pursuant to the Plea Agreement, **after it is signed**, or after entry of the Plea Agreement, including any statements I made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure.

Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorney, I agree to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 4-30-25

Lina Ceballes Perdomo
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of Offense and reviewed it fully with my client. I concur in my client's desire to agree to this Statement of the Offense as true and accurate.

Further, I have discussed with my client Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence, which ordinarily limit the admissibility of statements made by a defendant in the course of plea discussions or plea proceedings if a guilty plea is later withdrawn. I have discussed with my client that, **by signing the Plea Agreement**, my client waives the rights that arise under these rules in the event my client withdraws his/her guilty plea, withdraws from the Plea Agreement **after signing it**, or breaches the Plea Agreement.

Date: 4-30-25

Carmen Hernandez
Counsel for Defendant