UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-CR-369-2 (RBW) |
| | : | |
| LINA CEBALLES PERDOMO | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The Defendant was involved in a conspiracy to import a significant amount of cocaine into the United States. The Government respectfully requests that the Court sentence the Defendant to a period of incarceration at the middle of the Guideline range.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Beginning in or around February 2019, Special Agents with the Federal Bureau of Investigation ("FBI") Washington Field Office and FBI LEGAT Bogota (FBI Bogota) initiated an investigation into the drug trafficking activities of the Defendant and Co-Conspirator 2, and their associates based in Colombia. During the course of the investigation, it was determined that the Defendant and Co-Conspirator 2 are sister and brother.

Over the course of several months, Special Agents with FBI Bogota worked with a Confidential Human Source ("CHS") and recorded several meetings with the Defendant, Co-Conspirator 2, and some of their associates. The majority of these meetings were criminal in nature and the Defendant and Co-Conspirator 2 detailed to the CHS that they would like the CHS's help in transporting 150 kilograms of cocaine out of Colombia to the United States.

In March 2019, the CHS and the Defendant discussed the purchase of 15 to 20 kilograms of cocaine for importation into the United States. On March 24, 2019, the CHS and an Undercover Law Enforcement Officer ("UC") met with the Defendant, Co-Conspirator 2, and Co-Conspirator

3, to discuss the logistics of the deal. The Defendant, Co-Conspirator 2, and Co-Conspirator 3 advised that they required a $2,500 down payment for the deal. On March 27, 2019, the FBI wired $2,500 to a Colombian bank account at the instruction of the associates. Ultimately, this transaction did not occur, despite the associates accepting the down payment, and the money was returned.

On August 14, 2019, the Defendant and Co-Conspirator 2 arranged another cocaine sale to the CHS. The agreed upon transaction was 12 kilograms of cocaine in exchange for approximately $20,000. On August 14, 2019, Co-Conspirator 2 met the CHS and UC at a shopping center in Bogota, Colombia; Co-Conspirator 2 brought 12 kilograms of cocaine with him in a backpack. The CHS and UC gave Co-Conspirator 2 another bag containing currency in exchange for the cocaine. The substances in the backpack were analyzed and all tested positive for cocaine.

In October 2020, another cocaine purchase was arranged between the Defendant, Co-Conspirator 2, and the CHS. The deal was for 5 kilograms of cocaine. On October 19, 2020, Co-Conspirator 4, Co-Conspirator 5, and Co-Conspirator 6 met with the CHS and two UCs where they discussed, among other things, price and the fact that the cocaine would be destined for the United States. Later, Co-Conspirator 5, Co-Conspirator 6, and Co-Conspirator 7 met with two UCs at a shopping center in Bogota, Colombia to complete the deal. During this meeting, a UC asked Co-Conspirator 7 if the price was the same, and Co-Conspirator 7 stated words to the effect of, yes, of course the price would be the same that was previously negotiated, in apparent reference to the meeting earlier that day. However, these co-conspirators only brought 2 kilograms with them, instead of the agreed upon five kilograms, claiming that they feared being robbed. During the course of this delivery, Co-Conspirator 7 asked how many more kilos the UCs needed and

stated that he could provide the other three kilos, and they agreed to coordinate the subsequent 3 kilo delivery through Co-conspirators 4, 5, and 6.

The following day, October 20, 2020, Co-Conspirator 4, Co-Conspirator 5, Co-Conspirator 6 provided the remaining three kilograms to the CHS and the UC. The substances in each package were analyzed and all tested positive for cocaine. In exchange, approximately $6,700 was paid to the members of the conspiracy.

On April 30, the Defendant pleaded guilty to one count of Conspiracy to Distribute 500 Grams or More of a Mixture or Substance Containing a Detectable Amount of Cocaine for Purpose of Unlawful Importation, in violation of 21 U.S.C. §§ 959(a), 960(b)(2)(B)(ii), 963.

## II.    LEGAL STANDARD

Pursuant to 18 U.S.C. § 3553(a), the court shall impose a sentence that is sufficient, but not greater than necessary, to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and to "provide the defendant with needed educational or vocational training." 18 U.S.C. § 3553(a)(2). In addition, the Court must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant;" the types of sentences available, the Sentencing Guidelines; any pertinent policy statements; the need to avoid unwarranted sentence disparities; and the need to provide restitution to any victims. *Id.* § 3553(a).

## III.   ARGUMENT

A sentence at the middle of the Guideline range is appropriate. The Defendant conspired to import a significant amount of cocaine into the United States. The Government's recommended

sentence is also designed to reflect the seriousness of the offense, provide just punishment for the offense, protect the public from narcotics, deter the Defendant and others, and promote respect for the law.

### 1. The Nature, Circumstances, and Seriousness of the Offense

The conduct in which the Defendant engaged is serious. The investigation revealed that the Defendant, along with others in Colombia, conspired to import a significant quantity of cocaine into the United States. Though the conduct may have occurred far outside the United States, trafficking drugs into the United States carries significant consequences here.

First, while a widespread attention has been focused on fentanyl, cocaine is also dangerous. According to the CDC, in 2021, more than 24,000 Americans died from an "overdose involving cocaine." *See* CDC, *Stimulant Overdose* (last reviewed Aug. 23, 2023).[1] Even absent a fatal overdose, cocaine can have significant health impacts on users. *See* DEA, *Drug Fact Sheet: Cocaine* (October 2022).[2]

Second, as the Court is well aware, street level drug trafficking ravages communities. It imposes enormous social and economic costs and can bring violence and disruption as well. All of these harms are fueled by the raw supply of drugs supplied by people like the Defendant. The seriousness of the Defendant's conduct merits the Government's requested sentence.

### 2. The Defendant's History and Characteristics

According to the PSR, the Defendant has no prior convictions. Nevertheless, given the conduct in this case, the Government's requested sentence is warranted.

---

[1] https://www.cdc.gov/drugoverdose/deaths/stimulant-overdose.html.
[2] https://www.dea.gov/sites/default/files/2023-03/Cocaine%202022%20Drug%20Fact%20Sheet.pdf.

### 3. The Need to Promote Respect for the Law and Deterrence

Drugs have catastrophic impacts on communities throughout the United States. Too many people do not understand or fear the consequences to themselves or others that flow from this behavior, and they must understand that their conduct is unacceptable. The Government's requested sentence is designed to send that message.

### 4. Other factors

The Government's recommended sentence is also justified to deter the Defendant from engaging in such conduct again.

## IV. CONCLUSION

For the foregoing reasons, the Government recommends that the Court sentence the Defendant to a sentence at the middle of the Guideline range.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: */s/ Solomon S. Eppel*
SOLOMON S. EPPEL
Assistant United States Attorney
DC Bar No. 1046323
601 D Street, NW
Washington, DC 20530
(202) 252-6661
solomon.eppel@usdoj.gov